judgment, is as much liable to refund it to the defendant, as if he had been the original plaintiff in the action, whether he had or had not notice, at the time of receiving it, that the original defendant intended to prosecute a writ of error. If he received the money as agent, and, at the time of receiving it, had such notice, he is put upon his guard; and, if he pays over the money to his principal, without security for his indemnity, it is at his own peril; for the notice makes him liable to refund it to the original defendant in case the judgment should be reversed. In the present case, the notice accompanied the payment. If Mr. Mackall was competent to receive the money, he was competent to receive the notice. It was sufficient for the Bank of Washington that the notice should accompany the payment. They could not tell, beforehand, who would demand payment of the judgment. They could not, therefore, give any previous notice to the bank. It is true that they might have given notice to Triplett & Neale, the original plaintiffs; but they were not bound to give it. It was sufficient for them to wait until payment should be demanded. We think that the notice to Mr. Mackall, the agent of the Bank of the United States, placed that bank on the same ground of liability as that upon which the original plaintiffs stood; and that they are equally bound to refund the money, upon the reversal of the original judgment.

THRUSTON, Circuit Judge, absent, but understood as agreeing in the result of this opinion.

Reversed by the supreme court. [Bank of U. S. v. Bank of Washington,] 6 Pet. [31 U. S.] 8.

[NOTE. The supreme court reversed the judgment for the reason, with others, as stated by Thompson, J., that "no notice whatever could change the rights of the parties, so as to make the Bank of the United States responsible to refund the money. When the money was paid, there was a legal obligation on the part of the Bank of Washington to pay it, and a legal right on the part of Triplett & Neale to demand and receive it, or to enforce payment of it under the execution; and whatever was done under that execution while the judgment was in full force was valid and binding on the Bank of Washington, so far as the rights of strangers or third persons are concerned. The reversal of the judgment cannot have a retrospective operation, and make void that which was lawful when done. The reversal of the judgment gives a new right or cause of action against the parties to the judgment, and creates a legal obligation on their part to restore what the other party has lost by reason of the erroneous judgment; and, as between the parties to the judgment, there is all the privity necessary to sustain and enforce such right, but as to strangers there is no such privity; and if no legal right existed, when the money was paid, to recover it back, no such right could be created by notice of an intention so to do." Bank of U. S. v. Bank of Washington, 6 Pet. (31 U. S.) 8.]

BANK OF WASHINGTON, (BRENT v.) See Case No. 1,834.

## Case No. 948.

### BANK OF WASHINGTON v. BRENT.

[2 Cranch, C. C. 538.] [1]

Circuit Court, District of Columbia. Dec. Term, 1824.

CONTINUANCE—FAILURE OF PARTY TO APPEAR.

In case of an attachment by way of execution, if there be no appearance of the principal debtor, or garnishee, or other proceeding at the return term of the writ, the attachment is discontinued.

[At law. Action by the Bank of Washington against W. Brent, Jr.]

Attachment, by way of execution upon a judgment of the court, laid in the hands of F. May and B. Thruston, and returnable to October term, 1822.

Mr. Wallach, for plaintiffs.

Mr. Hall, as amicus curiae, suggested that the suit was discontinued, as no appearance had been entered for the principal debtor or garnishees, nor any further proceedings had at the first term.

THE COURT (THRUSTON, Circuit Judge, not sitting) decided that the cause was discontinued.

## Case No. 949.

### BANK OF WASHINGTON v. ELIOT.

[Cited in Union Bank of Georgetown v. Gozler, Case No. 14,358. Nowhere reported; opinion not now accessible.]

## Case No. 950.

### BANK OF WASHINGTON v. KURTZ.

[2 Cranch, C. C. 110.] [1]

Circuit Court, District of Columbia. June Term, 1813.

EVIDENCE—PRIMARY AND SECONDARY.

Parol evidence cannot be given of the contents of a letter from the notary public to the defendant, put into the post-office, without previous notice to the defendant to produce it.

[Cited in Underwood v. Huddlestone, Case No. 14,339.]

THE COURT refused to permit the notary public to give parol evidence of the contents of his letter to the defendant, who was the indorser of George Frank's promissory note, without previous notice to the defendant to produce the original letter, on the authority of Underwood v. Huddlestone, [Case No. 14,-339,] June term, 1813. Quaere?

BANK OF WASHINGTON, (MAGRUDER v.) See Case No. 8,963.

[1] [Reported by Hon. William Cranch, Chief Judge.]